## TAYLOR *v.* PHELAN ET AL.

[No. 17,494.   Filed October 28, 1946.]

*Arnold, Degnan, Goheen & Zimmerman,* of South Bend, and *Frank E. Hess,* of Goshen, for appellant.

*Mehl & Mehl,* of Goshen for appellee, Louis A. M. Phelan.

DRAPER, J.—On August 9, 1943, the appellant sued the appellee Phelan and others to quiet title to a city lot owned by Phelan, but which appellant had acquired by an Auditor's tax deed dated April 19, 1942. Service was had on Phelan, a non-resident, by publication. Default

judgment quieting the title was entered on November 24, 1943.

On September 29, 1944, Phelan filed an action against the appellant and others, alleging the existence of certain statutory insufficiencies in the course of the sale and issuance of the deed to the appellant, and praying that said deed be held invalid to convey title.

Later, on March 16, 1945, Phelan filed in the original action (the quiet title suit) a verified petition asking that the judgment be opened and that he be allowed to defend, for the reason that the only notice given him in that action was by newspaper publication and that he received no actual notice thereof in time to appear and. object to said judgment, and with that petition he tendered his answer to the original complaint.

The appellant resisted the application to open the judgment quieting title, asserting that Phelan was deprived of such relief by the provisions of ch. 72 of the Acts of 1941, being § 2-1068, Burns' 1946 Replacement.

The petition to open the judgment was sustained and the judgment quieting title was vacated and Phelan permitted to defend. Thereupon, Phelan's action to have the tax deed declared invalid was consolidated with the appellant's action to quiet title, the issues were closed, and a trial of the consolidated cases resulted in a judgment voiding appellant's tax title deed, quieting Phelan's title as against the appellant, granting Phelan possession of the real estate and according appellant a lien for the amount she had disbursed on account of the tax certificate and her expenditures for permanent improvements on the property.

The appellant first asserts error in the vacation and setting aside of the default judgment in the quiet title suit, it being her position that under ch. 72, Acts of 1941, § 2-1068, Burns' 1946 Replacement, when a default

judgment quieting title to real estate is entered, that judgment becomes final and irrevocable after the lapse of one year, whether service was personal or by publication, and notwithstanding the defendant had no actual knowledge of the pendency of the action before he filed his application to vacate the judgment.

The Act in question, upon which appellant relies, took effect March 1, 1941. The tax deed was issued April 19, 1942; the suit to quiet title was filed August 9, 1943; the default judgment was therein rendered November 24, 1943. Phelan's petition to open the judgment was filed March 16, 1945.

Section 2-2601, Burns' 1933, is § 64 of ch. 38, Acts 1881, as originally passed, and we shall hereinafter refer to it as § 64. It reads as follows:

"Parties against whom a judgment has been rendered without other notice than the publication in a newspaper as herein required, except in cases of divorce, may, at any time within five (5) years after the rendition of the judgment, have the same opened, and be allowed to defend."

Section 2-1068, *supra,* is § 135 of ch. 38, Acts 1881 as amended and we shall hereinafter refer to it as § 135 as amended. The pertinent part is as follows:

"The court shall relieve a party from a judgment taken against him through his mistake, inadvertance, surprise, or excusable neglect, on complaint filed and notice issued, as in original actions within two years from and after the date of the judgment, except where judgment on default has been rendered in a suit to quiet title to real estate in which case the complaint for relief from judgment on default shall be filed within one year from and after the date of judgment quieting title, and if the complaint is not filed within the period of time herein prescribed, then the action shall forever be barred:

*Provided,* That the provisions of this act pertaining to relief from judgment taken on default in a suit to quiet title to real estate shall apply to any judgment taken on default which is of record at the time of the passing of this act, and which judgment was obtained in a suit to quiet title to real estate, and shall apply to any and all persons whether service of process be by summons or by publication."

It has been held that the provisions of § 64, as implemented by § 65 (§ 2-2602, Burns' 1933) are mandatory, and when a party brings himself within the terms of these sections the court has no discretion in the matter of granting the relief prayed. *Gary Hobart, etc., Co.* v. *Earle* (1922), 78 Ind. App. 412, 135 N. E. 798. Section 64 applies to a case like the present, for by its very terms it applies to all except divorce cases. Unless, therefore, its efficacy has been destroyed or impaired by § 135 as amended, Phelan must prevail on the question of opening the judgment and allowing him to defend.

Section 135 as amended did not expressly repeal § 64 and the appellant does not claim a repeal by implication. She insists that the effect of § 135 as amended was to amend, not repeal, § 64. A sufficient answer is the fact that a statute may not be amended by implication. Const. § 21, Art. 4, *Wiley* v. *Wiley* (1921), 75 Ind. App. 456, 123 N. E. 252, *Northern Indiana Power Company* v. *West, Admx.* (1941), 218 Ind. 321, 32 N. E. (2d) 713.

But the appellant also insists that § 135 as amended must be considered to have created a modification of, or an exception to § 64, so that although § 64 can stand with § 135 as amended, it can stand only to the extent that § 135 as amended creates no conflict. The appellant relies upon such cases as *State, ex rel.* v. *Greenwald* (1917), 186 Ind. 321, 116 N. E. 296; *Taelman* v. *Bd. of Fin. of School City of South Bend* (1937), 212

Ind. 26, 6 N. E. (2d) 557, and *Northern Indiana Power Company* v. *West, Admx., supra.*

Conceding that the enactment of a law specifically and fully covering the .same subject matter that is covered or embraced in a general law, or any part of a general law, creates an exception to the general law, and operates to suspend or repeal to the extent of the conflict between the two, we still find no room for the application of that principle here. It was said in *Board, etc.* v. *Garty* (1903), 161 Ind. 464, 469, 68 N. E. 1012 that:

> "It has been repeatedly affirmed by the decisions of this court that implied repeals are only recognized and upheld when the later act is so repugnant to the earlier as to render the repugnancy or conflict between them irreconcilable. A court will always, if possible, adopt that construction which, under the particular circumstances in a given case, will permit both laws to stand and be operative."

If that is true of repeals by implication generally, it must be true of possible modifications or exceptions to an existing law. Is there then, such a conflict between the two sections as to render them irreconcilable, or can we so construe the two sections as to harmonize them and give full force and effect to each? We think we can.

Each of the sections under consideration has a different basis for the granting of relief. Section 64 has to do only with parties who have been served by publication and (§ 65) who are without actual notice. It applies to no others. Section 135 has to do with parties, plaintiff or defendant, against whom a judgment has been taken through their mistake, inadvertence, surprise or excusable neglect however they entered or were brought into the case. Before the 1941 amendment § 135 authorized relief within two years from

judgments obtained through mistake, inadvertence, surprise or excusable neglect, in any kind of case whether the judgment was rendered by default or otherwise.

The 1941 amendment changed the law as it theretofore stood (§ 2-1068, *supra*) only by adding the exception. The exception reduced the time to one year in cases of default judgment quieting title. The addition of the exception did not broaden, but on the contrary narrowed the scope of the section amended. The exception follows and serves to restrict the operation of the provision having to do with relief from judgments taken through mistake, inadvertence, surprise and excusable neglect. It carves something out of the general provision, which, in the opinion of the law-giver, would be within the general provision if the exception had not been made. 59 C. J., p. 1093, § 643. "While the exception may properly be considered in ascertaining the true meaning of the statute, it cannot put into the previous provision something which was not there before." *Batcheller-Durkee* v. *Batcheller* (1916), 39 R. I. 45, 97 A. 378.

We are therefore of the opinion that the exception contained in the 1941 amendment has the effect of reducing the time within which a complaint may be filed to set aside a default judgment in a suit to quiet title to real estate, based on mistake, inadvertence, surprise or excusable neglect. It goes no further. So construed, § 135 as amended conflicts no more with § 64 than has § 135 in its original form conflicted with § 64 since 1881 when both became the law, and both can stand in full force and effect.

Section 2, ch. 72, Acts 1941 confirms our belief. It reads as follows:

"The purpose and intent of this act is to hasten a valid title to real estate and prevent the existence of a cloud upon the title *for a period of two years*

from date of default judgment quieting title." (Our emphasis).

This language certainly manifests no purpose or intent to reduce the five year period fixed by § 64.

The appellant further asserts impregnability for her tax title by reason of § 4, ch. 224, Acts 1941, being § 64-2212, Burns' 1943 Replacement. Chapter 224 has ██ to do with the time and manner of sales of real estate for delinquent taxes, redemption from such sales, the issuance of deeds pursuant to such sales, and related subjects. Section 4 reads as follows:

> "That no action to contest the validity of any title acquired as a result of any *sale of any real estate under this act* shall be brought after the expiration of one year from the date of the execution of the deed." (Our emphasis.)

To meet appellant's contention Phelan insists (1) the question was not raised below; (2) Section 4 has no application to this case; and (3) to permit it to so operate would destroy rights vested in Phelan.

We consider the second well taken and so will not discuss the others. Statutes are treated as intended to operate prospectively and not retrospectively unless a contrary intention is expressed. *Chadwick, Treasurer* v. *Ciey of Crawfordsville* (1940), 216 Ind. 399, 24 N. E. (2d) 937. The deed in question was issued April 19, 1942, which was after the effective date of the legislation under consideration. The *sale* however was held and the certificate issued in April 1940, which was prior to the enactment thereof. The property, therefore, could not have been sold under that Act. An action to contest the validity of any title acquired by the appellant in this case would not be barred by § 4 for by its very terms § 4 affects only real estate sold under ch. 224, Acts 1941.

There remains appellant's third assignment of error which is based upon the overruling of her motion for new trial, which motion questions the sufficiency of the evidence and the legality of the decision. Under this heading the appellant insists the evidence fails to establish any defect in the proceedings resulting in the issuance of the tax deed.

Statutes governing tax sales and the steps leading up to them, must be substantially complied with before an owner may be deprived of his property by such a sale. *Zilky* v. *Carter* (1946), 116 Ind. App. 595, 66 N. E. (2d) 285.

The sale in question opened on April 8, 1940. The deputy auditor who clerked the sale testified that on the first day the sale was held at the court house door, but thereafter was conducted, and bids were received, in the county treasurer's office. The appellant's original bid was $450.29 and it is not clear whether that bid was made on the first day of the sale. However, on April 20, 1940, the county treasurer accepted from some third party a partial payment toward the taxes due on the real estate, leaving a balance due of $167.12. The tax certificate issued to the appellant was not actually issued until after April 20, 1940, but it is dated April 8, 1940, and certifies a sale on April 8th for a consideration of $167.12.

It is obvious that the certificate was not issued pursuant to the original bid. It was apparently issued pursuant to a later bid, if issued pursuant to a bid at all, which must have been received after April 20, 1940, when the partial payment was made. If such a bid were otherwise legal, a point which we do not decide, it was still made at a time when bids were being received and sales were being made only in the treasurer's office. The sale, not having been held at the place provided by law,

was invalid. § 64-2202, Burns' 1943 Replacement. *Dixon* v. *Thompson* (1913), 52 Ind. App. 560, 98 N. E. 738. The appellee calls our attention to other irregularities in connection with the sale, but to discuss them would unduly extend this opinion.

The appellant lastly attacks that part of the judgment awarding possession to Phelan. She insists the evidence shows that not Phelan, but his tenant, was entitled to possession if the appellant was not, and that Phelan could not maintain an action therefor.

The issue of possession was injected on November 9, 1945, when Phelan filed a "supplemental" complaint alleging himself to be the owner and entitled to the possession of the real estate and further alleging that since the filing of his original complaint (praying that the tax deed be held invalid to convey title) the appellant had taken and still retained possession thereof.

Phelan thus asserted facts which, instead of aiding the case made by the original complaint, introduced a new and independent cause of action upon which, if it were well taken, a recovery could be had without regard to the cause stated in the original complaint. See Watson's Works, Vol. I, § 864. It therefore, although filed without objection and entitled a supplemental complaint, cannot be so considered and cannot relate back to the filing of the original pleading, but must be considered as an additional separate paragraph of complaint.

The evidence discloses that one Menno Pletcher took possession of the property as a tenant of the appellant, under a lease dated December 21, 1944, and he continued to so occupy it at the time of trial. On August 24, 1944, Phelan had leased the property to one Clayton Pletcher for a term of two years commencing November 1, 1944. It appears that Clayton

Pletcher never gained possession. This is, therefore, not a case where Phelan had the right to possession when his action was commenced, but had disposed of it pending trial, for at the time he filed his paragraph of complaint seeking possession, he had already relinquished his right to possession by a lease which entitled his tenant to possession.

An action in ejectment is one to recover the possession of real estate, maintainable by one having a valid subsisting interest therein and a right to the possession thereof. § 3-1301, Burns' 1946 Replacement. Under the facts in this case the action was maintainable, when commenced, not by Phelan but by his tenant who then had the right to the possession of the property.

The appellee suggests, without the citation of authority, that Phelan should have the right to maintain the action for the purpose of putting his tenant in possession. Indiana follows the English rule and holds that in the absence of an express provision in the lease, the lessor impliedly covenants that the premises will be both legally and actually open for the occupancy of the tenant on the day the term begins. What rights Phelan might have had to oust the appellant's tenant had the latter been in possession of the real estate on November 1, 1944, we need not decide. The premises were legally and actually vacant on that day, and 'Phelan was not responsible for trespasses committed by strangers thereafter. *Hannan v. Dusch*, 154 Va. 356, 153 S. E. 824, 70 A. L. R. 151. The trial court erred in that part of its judgment which awarded possession to Phelan.

Judgment affirmed except insofar as it awarded possession to Phelan. In that regard, reversed and remanded with instructions to enter judgment for appellant.

NOTE.—Reported in 69 N. E. (2d) 145.